SMITHFIELD ASSOCIATES, LLC, ET AL. *v.*
TOLLAND BANK
(AC 23956)

Foti, Schaller and West, Js.

Argued January 16—officially released November 16, 2004

*Rodger C. Boe,* for the appellant-cross appellee (defendant).

*B. Paul Kaplan,* for the appellees-cross appellants (plaintiffs).

*Opinion*

WEST, J. In this action arising out of a contract dispute, the defendant, Tolland Bank, appeals from the judgment of the trial court rendered in favor of the plaintiffs, Smithfield Associates, LLC, and Zane R. Megos, Jr., and the plaintiffs cross appeal. The defendant claims that the court improperly (1) found that the defendant had waived its right to accelerate payment of the debt owed to it under the settlement agreement between the parties, (2) found that it had breached the agreement, (3) granted prejudgment interest to the plaintiffs, (4) found that it had acted unfairly and deceptively in violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq., (5) denied its counterclaim for attorney's fees and (6) awarded damages to the plaintiffs. In their cross appeal, the plaintiffs claim that the court improperly failed to award them an additional $4865.48 in attorney's fees for the defendant's breach of contract. For the reasons set forth herein, we affirm in part and reverse in part the judgment of the trial court.

The facts and procedural history pertinent to these appeals are as follows. As evidenced by two promissory

notes, the defendant loaned the plaintiffs $135,000 (loan 12511) to purchase property located at 60 Smith Avenue in Norwich and $124,000 (loan 12557) to purchase property located at 54-56 Broadway, also in Norwich. The plaintiff Megos signed both notes as president of Smithfield Associates, LLC. In December, 1999, a dispute arose between the plaintiffs and the defendant as to whether payments on both mortgage loans were current. In an agreement between the parties to settle the dispute, dated September 1, 2000, the plaintiffs agreed to pay the balance of the loans on or before November 30, 2000. In return, the defendant agreed to waive any unpaid legal fees, late charges or default interest that had accrued up to, and including, September 1, 2000.

The plaintiffs failed to pay the balance of the two notes by November 30, 2000. The defendant, however, continued to accept payments on the notes through May, 2001. With the balance of the two notes still unpaid, the defendant commenced foreclosure actions on May 25, 2001. The plaintiffs thereafter were able to find a buyer for the properties. At the closing of the 60 Smith Avenue property on August 29, 2001, the plaintiffs were required to pay the defendant $40,429.84, in addition to the amounts required to pay off the notes. This $40,429.84 consisted of interest charged at the default rate specified in the notes, as well as late charges and attorney's fees. The plaintiffs paid the additional charges under protest. The plaintiffs also claim that they were required to pay the town of Norwich $7961.53 in back real estate taxes, as well as $932.97 in interest, because of the defendant's failure to make timely tax payments.

The plaintiffs brought this action against the defendant, alleging breach of contract and violations of CUTPA. The defendant filed a counterclaim seeking attorney's fees under the notes. The court found that the defendant had breached the parties' agreement in

several respects. The court further found that the plaintiffs had breached the agreement by failing to pay the balance on the two notes by November 30, 2000, but also found that the defendant had waived its rights with respect to the plaintiffs' breach.

The court awarded the plaintiffs $38,637.65 on the breach of contract claim and $10,906.36 for attorney's fees under CUTPA and rendered judgment for the plaintiffs on the defendant's counterclaim. These appeals followed. Additional facts will be set forth as necessary.

I

The defendant first claims that the court improperly found that the defendant had waived its right to accelerate payment of the debt following the plaintiffs' failure to pay the balance of the two notes on or before November 30, 2000, as required by the agreement. Specifically, the defendant argues that the court improperly concluded that the settlement agreement did not incorporate the nonwaiver clauses of the notes into the agreement. We agree.

The defendant's claim requires us to examine the terms of the agreement. "The question of the parties' intent is [o]rdinarily . . . a question of fact [subject to appellate review under the clearly erroneous standard]. . . . If, however, the language of the contract is clear and unambiguous, the court's determination of what the parties intended in using such language is a conclusion of law. . . . In such a situation our scope of review is plenary, and is not limited by the clearly erroneous standard. . . . Thus, in the absence of a claim of ambiguity, the interpretation of [a] contract presents a question of law. . . . Well established principles guide our analysis in determining whether the language of a contract is ambiguous. [A] contract is ambiguous if the intent of the parties is not clear and certain from the language of the contract itself. [A]ny ambiguity in a

contract must emanate from the language used by the parties. . . . In contrast, [a] contract is unambiguous when its language is clear and conveys a definite and precise intent. . . . The court will not torture words to impart ambiguity where ordinary meaning leaves no room for ambiguity. . . . Moreover, the mere fact that the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous." (Citations omitted; internal quotation marks omitted.) *Nationwide Mutual Ins. Co.* v. *Allen,* 83 Conn. App. 526, 537–38, 850 A.2d 1047, cert. denied, 271 Conn. 907, 859 A.2d 562 (2004).

Accordingly, to determine our standard of review, we must first ascertain whether the pertinent language of the agreement is ambiguous. The last paragraph of the agreement states in relevant part: "To the extent that the borrowers and/or the guarantor defaults under the terms of this letter agreement, this shall, at [the defendant's] option, constitute a default under that certain promissory note in the original principal amount of $135,000.00 dated June 22, 1998, from [the plaintiffs] to [the defendant] and a default under that certain promissory note in the original principal amount of $124,000.00 dated September 3, 1998, from [the plaintiffs] to [the defendant] *and allow* [*the defendant*] *to exercise any and all legal rights and remedies at its disposal* . . . ." (Emphasis added.)

We conclude that the agreement's language with respect to the defendant's rights and remedies in case of the plaintiffs' default under the agreement is clear and unambiguous. Accordingly, we exercise plenary review.

The court determined that the agreement contained no language that incorporated the nonwaiver language of the notes[1] into its terms. A plain reading of the

---

[1] Both promissory notes state the following: "Any delay on the part of [the defendant] in exercising any right hereunder shall not operate as a waiver of any such right, and any waiver granted for one occasion shall not operate as a waiver in the event of any subsequent default."

agreement belies the court's conclusion. Under the plain terms of the agreement, the plaintiffs' default of the agreement may constitute, at the defendant's option, a default of the notes, and entitle the defendant to whatever legal rights and remedies are made available to it under the terms of those notes. The nonwaiver language of the notes, therefore, was incorporated into the agreement as a legal right and remedy available to the defendant.

"Generally, incorporation by reference of existing documents produces a single contract which includes the contents of the incorporated papers. Where . . . the signatories execute a contract which refers to [other instruments] in such a manner as to establish that they intended to make the terms and conditions of [those other instruments] a part of their understanding, the [contract and the other instruments] may be interpreted together as the agreement of the parties." (Internal quotation marks omitted.) *Randolph Construction Co.* v. *Kings East Corp.*, 165 Conn. 269, 275, 334 A.2d 464 (1973). Because the parties incorporated the nonwaiver clauses of the notes into their agreement, the court was precluded from determining that the defendant had waived the plaintiffs' default, which occurred upon the plaintiff's failure to pay the balance of the two notes on or before November 30, 2000. It was therefore improper for the court to conclude that such a waiver existed.

II

The defendant next claims that the court improperly found that the defendant had breached the parties' agreement by (1) charging the plaintiffs default rate interest and late charges during the period from September 1 to November 30, 2000, (2) charging the plaintiffs for attorney's fees that had accumulated during the period from September 1 to November 30, 2000, (3)

failing to credit any improper fees received during the period from September 1 to November 30, 2000, as payment on the principal, interest and escrow, and (4) failing to pay real estate taxes in a prompt manner. We agree.

"At the outset, we note that [w]hether there was a breach of contract is ordinarily a question of fact. . . . Our review, therefore, is under the clearly erroneous standard." (Citation omitted; internal quotation marks omitted.) *Benedetto* v. *Wanat*, 79 Conn. App. 139, 152–53, 829 A.2d 901 (2003).

## A

The court found that the defendant had breached the agreement by charging the plaintiffs for default interest and late charges during the period from September 1 to November 30, 2000. We disagree.

The agreement states in relevant part: "The [defendant] agrees to waive attorneys' fees, default interest and late charges up to and including [September 1, 2000] . . . . This waiver is specifically conditioned upon [the plaintiffs'] full performance of this proposed settlement agreement." Under the agreement, the plaintiffs were required to pay the balance of the two notes on or before November 30, 2000. In return, the defendant agreed to waive attorney's fees, default interest and late charges that had accrued on or before September 1, 2000, but not until the plaintiffs first satisfied the agreement's express condition of their full performance, including meeting the November 30, 2000 deadline. In other words, the plaintiffs had to perform fully by November 30, 2000, before the defendant's obligation to waive the charges at issue arose under the parties' agreement. Accordingly, it was not a breach of the parties' agreement for the defendant to bill for, and to accept payment of, fees it had agreed to waive on the express condition of the plaintiffs' full performance,

unless the plaintiffs, in fact, fully performed by November 30, 2000, and the defendant then retained those fees instead of refunding them to the plaintiffs. The plaintiffs, however, did not fully perform by November 30, 2000. The court, therefore, should not have found that the defendant breached the parties' agreement on this basis.

B

The court also found that the defendant had breached the agreement by charging the plaintiffs for attorney's fees at the August 29, 2001 closing that had accumulated during the period from September 1 to November 30, 2000. We disagree.

Even if the agreement's language regarding attorney's fees included those incurred during the period from September 1 to November 30, 2000, the plaintiffs did not fully perform by November 30, 2000, as required by the parties' agreement. Any right the plaintiffs enjoyed in the agreement with respect to the waiver of attorney's fees was made expressly conditional on their full performance by November 30, 2000. Under the terms of this agreement and the facts of this case, the defendant's obligation to waive attorney's fees never arose.

C

The court also found that the defendant had breached the agreement by failing to credit any default interest, late charges and attorney's fees received during the period from September 1 to November 30, 2000, as payment on the principal, interest and escrow. We disagree.

We already have concluded that the defendant did not breach the agreement by charging such fees prior to November 30, 2000. The court's finding that such payments should have been credited toward the principal, interest and escrow is predicated on the notion

that it was improper for the defendant to have received those fees. Because we disagree with the court that it was a breach of the agreement for the defendant to have received those fees, we also disagree with the court that any amount received should have been credited toward the principal, interest and escrow.

## D

The court further found that the defendant had breached the agreement by failing to make prompt payments of real estate taxes. Specifically, it found that the defendant was required by the agreement to make tax payments when the escrow accounts became properly funded on September 13, 2000. We disagree.

No language exists in the agreement or in the notes that defines the defendant's precise responsibilities with respect to the payment of real estate taxes. The plaintiffs' counsel therefore wrote to the defendant's counsel shortly after the agreement was drafted in order to establish the defendant's obligation to pay such taxes. The defendant's counsel memorialized the parties' understanding in a letter dated September 14, 2000.[2] In its memorandum of decision, the court never stated explicitly that the September 14, 2000 letter modified

---

[2] In the letter, the defendant's counsel stated: "This will confirm our conversation of earlier today. I did speak with [the defendant] earlier this morning. You had inquired whether or not [the defendant] would pay the outstanding taxes for the Smithfield properties with a portion of the money your clients are to pay in accordance with our settlement agreement.

"As I told you, [the defendant's] answer is as one would have expected. [The defendant] will make that payment promptly after receipt of the funds. (We have discussed in the past, but did not discuss this morning, the fact that one of your clients' accounts has a negative escrow balance. Of course, [the defendant] will repay itself for the money which it has advanced on behalf of [the plaintiffs.])

"Whether or not the escrow funds received by [the defendant] will be sufficient to satisfy all of the outstanding taxes is an open question. [The defendant] will apply all of the escrow funds to the taxes, but will not advance any of its own funds to pay taxes."

the parties' agreement or that it highlighted an implied obligation that already had existed in the agreement. We conclude that it was improper for the court to have found either scenario to be the case.

"A modification of an agreement must be supported by valid consideration and requires a party to do, or promise to do, something further than, or different from, that which he is already bound to do." (Internal quotation marks omitted.) *Christian* v. *Gouldin*, 72 Conn. App. 14, 23, 804 A.2d 865 (2002). In exchange for the defendant's assurance that it would pay the taxes "promptly" in the September 14, 2000 letter, it received no new consideration from the plaintiffs. The plaintiffs did not promise to do anything other than what they already had promised to do in the parties' agreement in exchange for the defendant's assurance. The September 14, 2000 letter, therefore, did not modify the parties' agreement.

We turn next to the possibility that the agreement contains an implied obligation that required the defendant to pay the taxes "promptly." If it does, the failure to do so would constitute a breach of the agreement. The agreement states the following with respect to real estate taxes: "The arrearages stated in [the defendant's counsel's] second letter to [the plaintiffs] of August 30, that is $6,625.03 for Loan No. 12511 and $2,264.66 for Loan No. 12557, do not include attorney's fees, late charges or default rate interest. They consist entirely of principal, regular interest and escrow payments for real estate taxes." The plaintiffs paid these arrearages on September 13, 2000.

The logical inference to draw from the agreement is that the defendant would pay the real estate taxes when the escrow accounts became properly funded. Precise time requirements for such payments, however, were not specified. The court found that the defendant had

breached the agreement because it "should have paid the taxes when the plaintiffs brought both accounts up to date [on September 13, 2000]." In effect, the court found that it was a breach of the agreement for the defendant not to pay the taxes "promptly." We note, however, that the parties themselves did not write such language into their agreement. It is one thing to suggest that the agreement impliedly required the defendant to incur the costs of an unreasonable delay in the payment of real estate taxes, but it is quite another to suggest that the agreement contains an implied obligation that the defendant pay such taxes "promptly" or else be deemed to have breached the contract.

"Where a contract makes provision for the performance of an obligation, a court cannot import into the agreement some other and different provision for carrying out that obligation." *Monteiro* v. *American Home Assurance Co.*, 177 Conn. 281, 285, 416 A.2d 1189 (1979). We will not write the parties' agreement for them and then conclude that a party failed to fulfill an obligation that never existed at the time the parties entered into their contract. The plaintiffs may cite the September 14, 2000 letter from the defendant's counsel and ask to be compensated for whatever default interest accrued as a result of the defendant's delayed payment of taxes. The plaintiffs, however, cannot cite the agreement for the proposition that the defendant breached the agreement by failing to make tax payments "promptly" after September 13, 2000. Accordingly, it was improper for the court to find that the defendant had breached the agreement on that basis.

### III

The defendant next claims that the court improperly granted the plaintiffs $4794.42 in prejudgment interest

pursuant to General Statutes § 37-3a.[3] We agree that most of the award was improper.

"The trier of fact may award prejudgment interest, as an element of damages, for the detention of money after it becomes payable if equitable considerations deem that such interest is warranted. . . . An award of such interest is an equitable determination lying within the trier's sound discretion. . . . The determination is one to be made in view of the demands of justice rather than through the application of an arbitrary rule. . . . A trial court must make two determinations when awarding compensatory interest under § 37-3a: (1) whether the party against whom interest is sought has wrongfully detained money due the other party; and (2) the date upon which the wrongful detention began in order to determine the time from which interest should be calculated." (Citations omitted; internal quotation marks omitted.) *Maloney* v. *PCRE, LLC*, 68 Conn. App. 727, 754–55, 793 A.2d 1118 (2002). "A plaintiff's burden of demonstrating that the retention of money is wrongful requires more than demonstrating that the opposing party detained money when it should not have done so. The fact that an award of such interest is discretionary and subject to equitable considerations, rather than automatic, reflects the reality that not all improper detentions of money are wrongful." Id., 756.

The court awarded the plaintiffs "10 percent interest per year on all damages other than punitive damages and the attorney's fees incurred to bring this action," or $4794.42, which represents 10 percent interest of $33,843.23[4] over a period of seventeen months. We note

---

[3] General Statutes § 37-3a provides in relevant part: "[I]nterest at the rate of ten per cent a year, and no more, may be recovered and allowed in civil actions . . . as damages for the detention of money after it becomes payable. . . ."

[4] This figure constitutes (1) $517.28 for late charges incurred prior to September 1, 2000, on loan 12511 that were paid on November 10, 2000, (2) $499.20 in late charges incurred prior to September 1, 2000, on loan 12557, that were paid at the closing, (3) $1502.78 in attorney's fees wrongfully

that the parties agree that the plaintiffs should retain $1502.78 for attorney's fees paid at the closing, which was awarded to the plaintiffs as part of the damages for the defendant's alleged breach of contract. The court therefore acted well within its discretion by awarding prejudgment interest on that particular sum of money. Because we have determined, however, that the defendant had a right to possess the remainder of the money, it was improper to award the rest of the prejudgment interest. The defendant could not improperly detain what it had a right to possess. Accordingly, we conclude that the court abused its discretion by awarding the plaintiffs the entire $4794.42 in prejudgment interest. The court should have awarded the plaintiffs only whatever prejudgment interest accrued on the $1502.78 in attorney's fees, pursuant to § 37-3a.

## IV

The defendant next claims that the court's finding that it had acted unfairly and deceptively in violation of CUTPA was clearly erroneous. We agree.

The banking industry is governed by CUTPA. *Normand Josef Enterprises, Inc.* v. *Connecticut National Bank*, 230 Conn. 486, 521, 646 A.2d 1289 (1994). "CUTPA provides in relevant part that [n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. General Statutes § 42-110b (a). Connecticut courts, when determining whether a practice violates

alleged to have been incurred by the defendant that were paid at the closing, (4) $13,563.63 in attorney's fees incurred by the defendant prior to September 1, 2000, on both loans, that were paid at the closing, (5) $1880.83 in attorney's fees incurred by the defendant from September 1 to November 22, 2000, that were paid at the closing, (6) $4209.74 in default interest incurred prior to September 1, 2000, on loan 12511, that was paid at the closing, (7) $3708.24 in default interest incurred prior to September 1, 2000, on loan 12557, that was paid at the closing and (8) $7961.53 in taxes paid to the town of Norwich at the closing.

CUTPA, will consider (1) whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or . . . the penumbra of some . . . other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers (or competitors or other businessmen). . . . Thus, a violation of CUTPA may be established by showing either an actual deceptive practice . . . or a practice amounting to a violation of public policy. . . .

"An act or practice is deceptive if three conditions are met. First, there must be a representation, omission, or other practice likely to mislead consumers. Second, the consumers must interpret the message reasonably under the circumstances. Third, the misleading representation, omission, or practice must be material—that is, likely to affect consumer decisions or conduct. . . . Whether a practice is unfair and thus violates CUTPA is an issue of fact. . . . On appellate review, we overturn factual determinations only when they are clearly erroneous." (Citations omitted; internal quotation marks omitted.) *Miller* v. *Guimaraes*, 78 Conn. App. 760, 775, 829 A.2d 422 (2003).

"[W]here the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous." (Internal quotation marks omitted.) Id., 774. The court found the following facts: "The defendant represented in the promissory notes that it signed with the plaintiffs that it would only charge late fees and a higher default interest rate if the plaintiffs were in default. The plaintiffs reasonably took this language at its face value and relied on it when entering into the contracts. Had they known that the [defendant] would

implement these charges in a harum-scarum manner, they would not have entered into the contracts. Further, the defendant's refusal to return money it overcharged the plaintiffs forced the plaintiffs to seek redress in the courts."

The defendant disputed the plaintiffs' position that it was improper to require them to pay $40,429.84 at the time of the closing. In an attempt to retain that money, it too had to endure the rigors of this litigation. Moreover, the court's finding that the defendant implemented default interest fees and late charges in a "harum-scarum manner" is not supported by the evidence. We emphasize that it was not a breach of the parties' agreement for the defendant to charge the plaintiffs for default interest, late charges and attorney's fees because the defendant was under no obligation to waive those charges until the plaintiffs first fully performed under the parties' agreement. Because the plaintiffs had breached the agreement by not paying the balance of the two notes on or before November 30, 2000, the defendant was entitled to require the plaintiffs to pay the charges at issue at the time of the closing. The court's finding that the defendant had violated CUTPA was clearly erroneous. Its award under that claim was therefore improper.

V

The defendant next claims that the court improperly denied its counterclaim for attorney's fees as described by the language in the notes. We agree.

The court's denial of the defendant's counterclaim followed from its interpretation of certain language in the notes. "A promissory note is nothing more than a written contract for the payment of money, and, as such, contract law applies. . . . In construing a contract, the controlling factor is normally the intent expressed in the contract, not the intent which the parties may have

had or which the court believes they ought to have had. . . . Where . . . there is clear and definitive contract language, the scope and meaning of that language is not a question of fact but a question of law. . . . In such a situation our scope of review is plenary, and is not limited by the clearly erroneous standard." (Citations omitted; internal quotation marks omitted.) *Alco Standard Corp.* v. *Charnas,* 56 Conn. App. 568, 571, 744 A.2d 924 (2000).

The relevant language in the notes is as follows: "[The plaintiffs agree] to pay all costs, expenses, and attorney's fees incurred by [the defendant] in any proceeding for the collection of the debt evidenced hereby, or any litigation or controversy arising from or connected with this Note, any guaranty of this Note, any of the Loan Documents and/or any mortgage securing this Note whether or not suit is initiated." The court concluded that the plain meaning of the language in the notes did not require the plaintiffs to pay the defendant's attorney's fees when judgment is rendered for the plaintiffs and against the defendant, as it was by the court. In light of our previous discussion, however, we conclude that the court improperly rendered judgment in favor of the plaintiffs.

Because we have concluded that the contract was clear and unambiguous, our scope of review is plenary. Thus, in examining the issue of whether the defendant was entitled to succeed under the counterclaim, we look at the clear language of the contract, which entitles the defendant to exercise any and all legal rights and remedies in the event of the plaintiffs' default. The plaintiffs agreed to pay all costs, expenses and legal fees if a dispute arose over the notes. Because there is no dispute that the plaintiffs defaulted on the notes and because the defendant did not waive any of its legal rights in the event that the plaintiffs failed to meet the stated payment deadlines, the defendant was entitled

to a judgment in its favor on the counterclaim. Accordingly, the court on remand should render judgment for the defendant on its counterclaim and conduct a hearing to determine what amount of costs, expenses and attorney's fees should be awarded to the defendant in connection with this litigation.

## VI

The defendant last claims that the court improperly awarded the plaintiffs certain damages for breach of contract and violations of CUTPA. We agree.

"[T]he trial court has broad discretion in determining whether damages are appropriate. . . . Its decision will not be disturbed on appeal absent a clear abuse of discretion." (Internal quotation marks omitted.) *Southington* v. *Commercial Union Ins. Co.*, 71 Conn. App. 715, 739, 805 A.2d 76 (2002).

The court awarded the plaintiffs $49,544.01 in damages. This award consisted of $38,637.65 for breach of contract, including $4794.42 in prejudgment interest and $10,906.36 for the defendant's CUTPA violations. We already have concluded that the award of prejudgment interest was improper, except for whatever interest accrued on the $1502.78 in attorney's fees paid at the closing. With respect to the other breach of contract damages, the parties agree that the plaintiffs should retain $1502.78. Accordingly, that award was proper. Inasmuch as we have determined that the defendant did not breach the parties' agreement, however, it was improper for the court to award the remaining $32,340.45 in damages for breach of contract. Similarly, because we concluded that the court's finding that the defendant had violated CUTPA was clearly erroneous, its award under that claim was improper.

## VII

In their cross appeal, the plaintiffs claim that the court improperly failed to award them the additional

sum of $4865.48 in damages for attorney's fees. We disagree.

A trial court's damages award will not be disturbed on appeal absent a clear abuse of discretion. Id., 739.

The plaintiffs claim that they actually paid $21,812.72 in attorney's fees, not $16,947.24 as stated by the court, at the closing. They claim that because the defendant had breached the agreement, they are therefore entitled to a full refund of attorney's fees paid at the closing. The defendant, however, did not breach the parties' agreement; the plaintiffs breached the agreement. The plaintiffs do not argue that the parties agree that this additional sum of $4865.48, like the previously mentioned $1502.78, should not have been charged. Accordingly, we cannot conclude that the court abused its discretion by failing to award the plaintiffs that particular sum.

On the defendant's appeal, the judgment is reversed except for the award of $1502.78 and the prejudgment interest accrued on that particular sum and the matter is remanded with direction to render judgment for the defendant on its counterclaim and for further proceedings to determine the amount of prejudgment interest to award to the plaintiffs and to determine the amount of costs, damages and attorney's fees to award to the defendant on the counterclaim. On the plaintiffs' cross appeal, the judgment is affirmed.

In this opinion the other judges concurred.