HOWARD B. SOSIN *v.* SUSAN F. SOSIN
(SC 18238)

Norcott, Palmer, Vertefeuille, Zarella and Flynn, Js.*

* The listing of justices reflects their seniority status on this court as of the date of oral argument.

Argued May 27, 2010—officially released February 22, 2011

*Wesley W. Horton*, with whom were *Daniel Jonah Krisch* and *Mark R. Soboslai*, for the appellant-appellee (plaintiff).

*Charles D. Ray*, with whom were *Frederic J. Siegel* and *Matthew A. Weiner*, for the appellee-appellant (defendant).

*Opinion*

PALMER, J. This certified appeal and cross appeal arise from a marital dissolution action brought by the plaintiff, Howard B. Sosin, against the defendant, Susan F. Sosin. The trial court rendered a judgment of dissolution and, as part of the distribution of marital assets, ordered the plaintiff to pay the defendant the sum of $24,000,000 out of certain bank and brokerage accounts. The plaintiff filed a motion to reargue in which he noted several errors that the trial court had made in distributing certain personal property. Thereafter, the plaintiff filed an amended motion to reargue in which he claimed that the lump sum payment should be reduced by $1,825,000 because the trial court had overvalued a bank account by $3,650,000. The trial court granted the plaintiff's first motion to reargue and issued an order

reducing the lump sum payment to the defendant to $23,834,900 but denied the amended motion to reargue. When the plaintiff paid the defendant $20,006,819, the defendant filed a motion for contempt. The trial court then ordered the plaintiff to pay the defendant $3,828,081 plus interest pursuant to General Statutes § 37-3a.[1] On appeal, the Appellate Court upheld the trial court's order requiring the plaintiff to pay the defendant $23,834,900. See *Sosin* v. *Sosin*, 109 Conn. App. 691, 700–702, 710, 952 A.2d 1258 (2008). The Appellate Court also concluded that the trial court properly had ordered the plaintiff to pay interest on the award; id., 707; but it remanded the case to the trial court so that that court could conduct a hearing on the amount of interest due. Id., 710. We granted the plaintiff's petition for certification to appeal, limited to the following issues. First "[d]id the Appellate Court properly apply . . . § 37-3a in determining that the trial court properly awarded interest on the detained funds?" *Sosin* v. *Sosin*, 289 Conn. 934, 935, 958 A.2d 1245 (2008). Second, "[d]id the Appellate Court properly determine that the trial court did not improperly modify the original distribution of assets?" Id. We also granted the defendant's petition for certification to cross appeal, limited to the following issue: "Did the Appellate Court properly remand [the] matter to the trial court for a de novo hearing on the amount of interest or should it have merely reinstated the trial court's November [27], 2006 award of interest?"[2] *Sosin* v. *Sosin*, 289 Conn. 935, 958

---

[1] General Statutes § 37-3a provides in relevant part: "(a) Except as provided in sections 37-3b, 37-3c and 52-192a, interest at the rate of ten per cent a year, and no more, may be recovered and allowed in civil actions or arbitration proceedings under chapter 909, including actions to recover money loaned at a greater rate, as damages for the detention of money after it becomes payable. . . ."

[2] There is some confusion as to the date that the trial court issued this order. The date in the caption of the order is November 24, 2006. The Appellate Court indicated, however, that it was issued on November 27, 2006. *Sosin* v. *Sosin*, supra, 109 Conn. App. 697. On the basis of the defendant's representation in her conditional petition for certification to cross appeal

A.2d 1245 (2008). We conclude that the Appellate Court properly determined that the trial court's order directing the plaintiff to pay the defendant $3,828,081 did not constitute an improper modification of the original judgment and that the trial court had the discretion to award interest pursuant to § 37-3a because it reasonably could have concluded that the plaintiff had wrongfully withheld payment of the $3,828,081 to the defendant.[3] We further conclude that the Appellate Court improperly remanded the case to the trial court for a determination on the issue of postjudgment interest because the record is sufficiently clear with respect to this issue. Accordingly, we reverse in part the judgment of the Appellate Court.

The record reveals the following undisputed facts and procedural history. After a trial, the trial court rendered a judgment dissolving the parties' marriage on March 22, 2005. The dissolution order incorporated the trial court's memorandum of decision, in which the court had ordered the distribution of the parties' marital assets. Among other items, these assets included fine furniture, valuable paintings and seventeen bank and brokerage accounts. The trial court determined that

that the order had been issued on November 17, 2006, this court indicated in its order granting that petition that that was the date of the order. *Sosin* v. *Sosin*, 289 Conn. 935, 958 A.2d 1245 (2008). On appeal, the plaintiff represents that the order was issued on November 27, 2006, whereas the defendant represents that it was issued on November 24, 2006. Because the official case detail sheet indicates that the order was issued on November 27, 2006, we use that date as the operative date for purposes of this opinion.

[3] As we discuss more fully in part II of this opinion, we must reframe the first certified question that the plaintiff raises because the Appellate Court did not conclude that the trial court properly had awarded interest to the defendant pursuant to § 37-3a but only that the trial court was not precluded from awarding interest because that court reasonably could have concluded that the plaintiff had acted wrongfully. See *Sosin* v. *Sosin*, supra, 109 Conn. App. 702–707. As we indicated, the Appellate Court remanded the case to the trial court for a determination as to whether the defendant was entitled to interest. See id., 710.

the value of the bank and brokerage accounts as of December 31, 2004, was $89,039,617.68 and ordered that "[t]he plaintiff will maintain his interest in, and the defendant will transfer to the plaintiff all her right, title and interest in, the . . . bank/brokerage accounts . . . ." The court also awarded "the sum of [$24 million]" to the defendant and ordered that "[t]he plaintiff shall choose to pay this amount from any of his seventeen accounts."

After the trial court issued its memorandum of decision, however, the plaintiff discovered that the decision contained several errors. Specifically, the trial court misstated the value of eight pieces of furniture, resulting in an overstatement of their value to the plaintiff of $459,700. In addition, the trial court awarded a painting to both parties and failed to award another painting to either party. Finally, the trial court stated that the value of one of the seventeen bank or brokerage accounts was $57,650,000 when the parties had agreed that the account had a balance of $54,000,000, resulting in an overstatement of the value to the plaintiff of $3,650,000.[4] In light of these errors, the plaintiff filed a motion to reargue with respect to the distribution of assets, in which he asserted that the trial court should deduct one half of the $459,700 discrepancy in the valuation of the furniture, or $229,850, from the lump sum award to the defendant and, further, that the court should award the two paintings to him and award one half of the value of the paintings, or $64,750, to the defendant. Thereafter, the plaintiff filed an amended motion to reargue in which he noted the trial court's erroneous valuation of the bank or brokerage account and asserted that the error had resulted in a $3,650,000 shortfall "in the amount awarded to the [p]laintiff." He further argued that the trial court should deduct one half of

---

[4] The defendant does not dispute that the trial court's valuation of the account was incorrect.

the shortfall, or $1,825,000, from the lump sum award to the defendant.

On September 8, 2005, the trial court granted the plaintiff's initial motion to reargue. The court stated that it was its "intention to award [the] defendant the lump cash award of $24,000,000" and ordered that the award be reduced by $165,100[5] to $23,834,900. On October 11, 2005, the court summarily denied the plaintiff's amended motion to reargue.

When the plaintiff failed to pay the $23,834,900 award, the defendant, on November 3, 2005, filed a motion for contempt. Thereafter, on November 10, 2005, the plaintiff paid the defendant $20,006,819.[6] In her memorandum of law in support of the motion for contempt, the defendant argued that the trial court should find the plaintiff in contempt and order the plaintiff to pay, pursuant to § 37-3a (a), interest in the amount of $1,325,590 on the principal amount of $20,006,819 for the period April 21, 2005,[7] to November 10, 2005, the date on which the plaintiff paid that amount to the defendant. The defendant also sought interest in the amount of $111,171.74 for the period of April 21, 2005, to November 10, 2005, and an additional $1048.79 per day after November 10, 2005, on the remaining principal balance of $3,828,081. The trial court held a hearing on the motion for contempt on February 17, 2006. At the hearing, the plaintiff maintained that the trial court had

[5] This amount represents the credit to the plaintiff for one half of the overvaluation of the furniture, or $229,850, less the value of the defendant's one-half interest in the two paintings that were awarded to the plaintiff, or $64,750.

[6] This amount represented $23,834,900, less the $3,650,000 overvaluation of the bank or brokerage account, plus $178,081 for various items that are not relevant to this appeal.

[7] April 21, 2005, is the date by which the plaintiff was required to remit the lump sum payment to the defendant according to the order issued in connection with the judgment of dissolution and all relevant modifying orders.

intended to award him the specific dollar amount in the bank and brokerage accounts, or $89,039,617.68, less the lump sum payment of $24,000,000. He asserted that the asset distribution order was ambiguous because, under that order, he could either pay himself $65,039,617.68 or pay the defendant the $24,000,000 lump sum award, but, because the trial court's valuation of the accounts was incorrect, he could not do both. Accordingly, he chose to resolve the ambiguity by paying himself $65,039,617.68. The defendant claimed that, to the contrary, the trial court unambiguously had ordered that the plaintiff would retain possession of the accounts, not that he was entitled to any specific dollar amount, and that it unambiguously had ordered him to pay the defendant $24,000,000.

On March 23, 2006, the trial court issued a ruling on the defendant's motion for contempt, stating that the plaintiff had "unilaterally deducted $3,828,081 from the sum due [to] the defendant" and ordered the plaintiff to pay her that amount within ten days of the order. The trial court also ordered the plaintiff to pay "[i]nterest at the legal rate . . . on said sum from September 8, 2005," the date on which the court had modified its original order in response to the plaintiff's initial motion to reargue. Because the trial court had "some doubt as to whether [the] plaintiff's conduct was wilful and deliberate," however, it denied the motion for contempt. On March 31, 2006, the plaintiff paid the defendant $4,002,599.54. This amount included interest from September 8, 2005, at an annual rate of 8 percent.

The plaintiff then filed a motion for reargument in which he asserted that, because the trial court had not entered a final order disposing of all postjudgment issues until October 11, 2005, and because the court originally had ordered that the lump sum payment was not due until thirty days after the date of the dissolution judgment, he should not have been required to pay

interest from September 8, 2005. The defendant also filed a motion for reargument, claiming that the trial court improperly had denied her request for interest on the principal amount of $23,834,900 ($20,006,819 plus $3,828,081) from April 21, 2005, through November 10, 2005. Thereafter, the trial court denied the plaintiff's motion for reargument, and the plaintiff appealed to the Appellate Court from the order issued in connection with the ruling on the defendant's motion for contempt. The defendant filed a cross appeal. The trial court then denied the defendant's motion for reargument, and the defendant filed an amended cross appeal. Because the plaintiff was not certain whether the appeal period had commenced on the date that the trial court had denied his motion for reargument or on the date that it had denied the defendant's motion for reargument, he filed a second appeal from the latter ruling. The Appellate Court then consolidated the plaintiff's two appeals.

Meanwhile, the defendant filed another motion for contempt in which she contended that, pursuant to § 37-3a, the plaintiff should have paid her interest at the annual rate of 10 percent on $3,828,081 starting on September 8, 2005, rather than at the annual rate of 8 percent. On November 27, 2006, the trial court issued an order in which it required the plaintiff to pay 10 percent interest on the award pursuant to § 37-3a but denied the motion for contempt. The plaintiff then filed an amended appeal. Thereafter, in response to a motion for review that the defendant had filed on November 13, 2006,[8] the Appellate Court ordered the trial court to articulate the statutory basis for its award of interest. The trial court issued an articulation in which it stated that the rate of interest was 8 percent pursuant to Gen-

---

[8] The defendant filed a motion for articulation of the trial court's March 23, 2006 order, which the trial court denied. The defendant filed a motion for review of the denial with the Appellate Court on November 13, 2006.

eral Statutes § 37-1.[9] The defendant then filed a motion to reconsider that articulation as well as a motion for review with the Appellate Court. Before the Appellate Court could rule on the motion for review, the trial court granted the defendant's motion for reconsideration and issued an order, again stating that the rate of interest was 8 percent pursuant to § 37-1. The defendant then amended her cross appeal.

On appeal to the Appellate Court, the plaintiff claimed, inter alia, that the trial court improperly had ordered him to pay the defendant $3,828,081 as the unpaid portion of the original award of $24,000,000 because the order was inconsistent with the original dissolution order awarding the plaintiff the specific amounts in the bank and brokerage accounts less the lump sum payment to the defendant. See *Sosin* v. *Sosin*, supra, 109 Conn. App. 693. He also claimed that the trial court improperly had ordered him to pay interest on the award when he had not wrongfully withheld payment. Id. The defendant claimed in her cross appeal to the Appellate Court that the trial court improperly (1) had concluded that § 37-1, and not § 37-3a, applies to this case, and (2) had "failed to award such interest on all of the [money] to which it applied from the date that the defendant was obligated to have made payment to her." Id. The plaintiff ultimately conceded that the trial court should have applied § 37-3a and not § 37-1. See id., 702 ("[t]he parties agree that the court's reliance on [§ 37-1] was improper"). In his appeal, however, the plaintiff claimed that, if the Appellate Court rejected his contention that the trial court improperly had awarded interest under § 37-3a because his withholding of payment was not wrongful, the Appellate Court should

---

[9] General Statutes § 37-1 provides in relevant part: "(a) The compensation for forbearance of property loaned at a fixed valuation, or for money, shall, in the absence of any agreement to the contrary, be at the rate of eight per cent a year . . . ."

affirm the order of the trial court requiring him to pay interest only on the unpaid principal amount of $3,828,081 because the trial court properly had denied the defendant's claim for interest on the entire judgment amount. The Appellate Court concluded that (1) the trial court properly ordered the plaintiff to pay the defendant $3,828,081; id., 702; (2) under the circumstances of the present case, the trial court was not foreclosed from awarding interest to the defendant pursuant to § 37-3a; id., 707; and (3) because the trial court had not "clearly set forth its rationale for awarding interest [on $3,828,081] under the proper statute," the case must be remanded to the trial court for a hearing on the issue. Id., 708.

This certified appeal and cross appeal followed. The plaintiff claims that the Appellate Court incorrectly concluded that (1) the trial court's March 23, 2006 order that he pay the defendant $3,828,081 was not an improper modification of the original March 22, 2005 judgment, and (2) the trial court was not foreclosed from awarding interest to the defendant pursuant to § 37-3a when the plaintiff had not withheld payment to the defendant without justification. The defendant disputes these claims and contends that the Appellate Court improperly remanded the case to the trial court for a hearing on the amount of interest due instead of reinstating the trial court's November 27, 2006 order directing the plaintiff to pay 10 percent interest on the $3,828,081. We conclude that the Appellate Court correctly determined that (1) the trial court properly ordered the plaintiff to pay the defendant $3,828,081, and (2) the trial court was not foreclosed from awarding interest to the defendant pursuant to § 37-3a even if the plaintiff withheld payment on the basis of a good faith belief that the defendant was not entitled to the payment. We further conclude that the Appellate Court improperly remanded the case to the trial court for a hearing on the amount

of interest due instead of reinstating the trial court's March 23, 2006 order, as clarified by its November 27, 2006 order.

I

We first consider the plaintiff's claim that the Appellate Court incorrectly concluded that the trial court's March 23, 2006 order that he pay the defendant $3,828,081 was not an improper modification of the distribution of assets ordered in the March 22, 2005 judgment of dissolution and accompanying financial order. The plaintiff contends that the trial court's intent with respect to the distribution of the funds in the bank and brokerage accounts, as set forth in its original memorandum of decision, clearly and unambiguously was to award him the specific dollar amount in the accounts and that the order requiring him to pay the defendant $3,828,081 was inconsistent with that intent. The defendant contends that the original intent of the trial court was to award the accounts to the plaintiff, but not a specific dollar amount and, further, that the trial court's intent was to award a specific dollar amount to the defendant. We agree with the defendant.

We begin with the standard of review. The interpretation of a trial court's judgment presents a question of law over which our review is plenary. See *Phoenix Windows, Inc.* v. *Viking Construction, Inc.*, 88 Conn. App. 74, 77, 868 A.2d 102, cert. denied, 273 Conn. 932, 873 A.2d 1001 (2005). "As a general rule, judgments are to be construed in the same fashion as other written instruments. . . . The determinative factor is the intention of the court as gathered from all parts of the judgment. . . . The interpretation of a judgment may involve the circumstances surrounding the making of the judgment. . . . Effect must be given to that which is clearly implied as well as to that which is expressed. . . . The judgment should admit of a consistent con-

struction as a whole." (Internal quotation marks omitted.) Id.

The trial court has jurisdiction to clarify an ambiguous judgment at any time. See *AvalonBay Communities, Inc.* v. *Plan & Zoning Commission*, 260 Conn. 232, 246, 796 A.2d 1164 (2002). "[T]he trial court has no jurisdiction [however] to open a judgment and [to] affect the property assignment [in a marital dissolution action] except within four months after the original judgment." *Clement* v. *Clement*, 34 Conn. App. 641, 644–45, 643 A.2d 874 (1994), citing General Statutes § 52-212a.[10]

With these principles in mind, we turn to the language of the trial court's memorandum of decision, which was incorporated into the judgment of dissolution. The trial court stated that "[t]he plaintiff will maintain his interest in, and the defendant will transfer to the plaintiff all her right, title and interest in, the following bank/ brokerage accounts . . . . The plaintiff will have exclusive possession of these accounts and funds on the date of this decree." The trial court then listed the seventeen bank and brokerage accounts, including the dollar amount in each account. As we have indicated, the trial court found that the amount in one of the accounts was $57,650,000 when it actually was $54,000,000, resulting in a $3,650,000 discrepancy. The trial court also stated that it "awards the defendant the sum of twenty-four million dollars ($24,000,000). The plaintiff shall choose to pay this amount from any of his seventeen accounts. This sum shall be paid within thirty . . . days of this decree."

---

[10] General Statutes § 52-212a provides in relevant part: "Unless otherwise provided by law and except in such cases in which the court has continuing jurisdiction, a civil judgment or decree rendered in the Superior Court may not be opened or set aside unless a motion to open or set aside is filed within four months following the date on which it was rendered or passed. . . ."

For several reasons, we conclude that the trial court intended to award possession of the bank and brokerage accounts, but not a specific dollar amount, to the plaintiff, and that the trial court intended to award a specific amount from those accounts to the defendant. First, the trial court awarded the plaintiff all of the defendant's "right, title and interest in, the . . . bank/ brokerage accounts," whereas it expressly awarded the defendant a specific sum of money, namely, "the sum of [$24 million]." This language indicates that the trial court had distinct intents with respect to the awards. Moreover, if the trial court had intended to award a specific sum of money to the plaintiff, ordering the defendant to transfer her interest in the accounts to the plaintiff and then awarding a lump sum to the defendant would have been a curious way to carry out that intent. Indeed, if the court had intended to award a specific dollar amount to each party, it easily could have done so by allocating such an amount to each party.

Second, although the trial court based its judgment on the value of the bank and brokerage accounts as of December 31, 2004, it is undisputed that the value of the accounts was subject to fluctuation. Thus, it is unlikely that the parties would have been able to comply with a judgment awarding a specific dollar amount to each party, even if the amounts found by the trial court had been accurate. Accordingly, it is reasonable to conclude that the trial court determined the value of the accounts as of a particular date merely as a broad guide for its equitable distribution of the funds, not because it intended to award a specific dollar amount to the plaintiff. See 46 Am. Jur. 2d 449, Judgments § 75 (2006) ("[when] a judgment is susceptible of two interpretations, that one will be adopted which renders it the more reasonable, effective, and conclusive, and which makes the judgment harmonize with the facts and law of the case and be such as ought to have been rendered").

Finally, the trial court effectively clarified its intent with respect to the asset distribution when it denied the defendant's amended motion for reargument. The fact that the trial court declined to correct the judgment to reflect the actual dollar amounts in the bank and brokerage accounts indicates that those specific dollar amounts had not been a critical component of the trial court's judgment. Cf. *State* v. *Denya*, 294 Conn. 516, 531, 986 A.2d 260 (2010) ("[B]ecause the trial judge who issues the order that is the subject of subsequent clarification is familiar with the entire record and, of course, with the order itself, that judge is in the best position to clarify any ambiguity in the order. For that reason, substantial deference is accorded to a court's interpretation of its own order."). This, in turn, supports the interpretation that the trial court had used the dollar amounts merely as a general guide to the equitable distribution of the marital assets, and that it had not intended to award a specific dollar amount to the plaintiff.[11] A contrary conclusion would mean that, when the trial court denied the amended motion for reargument, it knowingly reaffirmed a mathematically impossible distribution of the funds. We must presume that the trial court did not intend such a result.[12] See 46 Am. Jur. 2d 449, supra, § 75. We conclude, therefore, that the trial court intended to award possession of the bank and brokerage accounts to the plaintiff, and not to award him a specific dollar amount.

---

[11] It would have been preferable, however, for the trial court to correct the mistaken valuation of the account and expressly to clarify that it had not intended to award a specific dollar amount to the plaintiff in the judgment of dissolution.

[12] Moreover, even if we were to conclude that the trial court's denial of the plaintiff's amended motion for reargument constituted a modification of the original judgment, insofar as it resulted in the defendant's receipt of less money than the trial court originally had intended, the modification would not have been improper under § 52-212a because the plaintiff had requested a modification of the judgment within four months of the date that it was rendered, and he did not object to or appeal from the resulting order.

In support of his claim to the contrary, the plaintiff relies on *Hyslop* v. *Hyslop*, Docket No. WD-03-053, 2004 WL 1593631 (Ohio App. July 16, 2004). In that case, the trial court ordered that all of the parties' joint property be divided equally. Id., *3. When the husband failed to pay the amounts due to the wife, the trial court issued a postjudgment order requiring the husband to pay the sum of $144,030.69, which represented the wife's share of certain jointly held accounts as of the date of judgment. See id., *1–*2. Because the value of the accounts had decreased since the date of judgment, the husband appealed from the order, claiming that it constituted an improper modification of the original distribution scheme. See id., *1. On appeal, the Court of Appeals of Ohio concluded that, "[b]ecause the accounts were valued . . . the trial court had those values in mind when it divided the property in a manner it considered equitable and . . . the court intended for [the wife] to receive a settlement with a certain dollar amount, not merely receive an in-kind distribution of the accounts with whatever value they had when transferred to [the wife] in the future." Id., *3.

To the extent that *Hyslop* may be construed as concluding that the fact that a trial court has assigned a dollar value to an asset necessarily evinces an intent that the parties will receive a specific dollar amount upon distribution of that asset, we are not persuaded by the court's reasoning. Indeed, under the facts of *Hyslop*, that conclusion led to an inherently inconsistent result. If the trial court in that case originally had intended to award a specific dollar amount to the wife, presumably it also intended to award a specific dollar amount to the husband, and the trial court's subsequent order that the husband pay the wife the originally specified amount, leaving the husband with a smaller amount than originally specified, would have been inconsistent

with the latter intent.[13] In any event, *Hyslop* is distinguishable from the present case because the issue presented in *Hyslop*, namely, whether an award is to be predicated on the value of assets at the time of judgment or at the time of distribution, is not the issue presented by this case.

The plaintiff also relies on *Roth* v. *Hoffer*, 715 N.W.2d 149 (N.D.), cert. denied, 549 U.S. 1002, 127 S. Ct. 511, 166 L. Ed. 2d 381 (2006). In that case, the trial court found that the net value of the husband's 401 (k) plan was $42,387.14 and awarded the wife 65 percent of that net value, or $27,551.64. Id., 150. Thereafter, the wife learned that the account actually had a value of $65,657.26, and she requested a supplementary, post-judgment order requiring the husband to pay her 65 percent of that amount, or $42,827.22.[14] Id. The trial court granted her request and issued an amended judgment accordingly. Id. On appeal, the husband claimed that, because the trial court had the authority to amend the judgment only for the purpose of correcting a clerical mistake, it had lacked jurisdiction over the wife's request. Id., 151. The Supreme Court of North Dakota noted that, unlike the judgment, the trial court's memorandum of decision had not identified a specific dollar amount but had stated only that the wife would be awarded 65 percent of the husband's 401 (k) account. Id., 152. The court also stated that "[t]he [trial] court

[13] It is possible that the trial court in *Hyslop* had concluded that the wife was entitled to the specific dollar amount in the accounts at the time of judgment because it concluded that the delay in distributing the funds and the resulting depreciation was the husband's fault. See *Hyslop* v. *Hyslop*, supra, 2004 WL 1593631, *3 (wife claimed that "she was unable to obtain the joint stocks due to the pendency of the appeals [that the husband] chose to pursue" and "that [the husband had] refused to pay her the funds to which she was entitled").

[14] Sixty-five percent of $65,657.26 is $42,677,22, not $42,827.22, as the court had indicated. See *Roth* v. *Hoffer*, supra, 715 N.W.2d 150. It is unclear from the court's opinion why this $150 discrepancy existed.

was in a better position than [the reviewing] [c]ourt to know what it intended in making the original distribution of the 401 (k) plan."[15] Id. It concluded, therefore, that the trial court's original intent had been to award 65 percent of the account to the wife and that the trial court merely had made a clerical mistake when it identified a specific dollar amount in the judgment. See id., 152–53. Accordingly, the Supreme Court of North Dakota concluded that the trial court had jurisdiction to amend the judgment to reflect the trial court's original intent. Id., 153.

In the present case, the plaintiff claims that, because the court in *Roth* concluded that the trial court's *failure* to specify a dollar amount in its memorandum of decision reflected an intent *not* to award that specific amount, *Roth* supports the proposition that, when a trial court *has* specified the dollar value of an asset awarded to a party, the trial court necessarily intended to award that specific dollar amount to the party. We disagree. *Roth* merely stands for the proposition that, when a court awards both a specific dollar amount and a specific percentage of an asset, the value of which is subject to fluctuation, the judgment is ambiguous, whereas a judgment that specifies only the percentage of an asset to be awarded is not.[16] Because the trial

[15] The plaintiff notes that the Appellate Court has held that "[t]he fact that the same court that drafted the order interpreted the order does not preclude [a reviewing court] from interpreting the order differently." *Sheehan* v. *Balasic*, 46 Conn. App. 327, 333 n.4, 699 A.2d 1036 (1997), appeal dismissed, 245 Conn. 148, 710 A.2d 770 (1998). We agree that this court would not be precluded from interpreting a judgment differently from the trial court if the trial court's interpretation was inconsistent with the clear language of the original judgment. We agree with the court in *Roth*, however, that, as a general rule, in interpreting a judgment, we may rely on the trial court's interpretation of the judgment because that court is in the best position to know its original intent. See, e.g., *State* v. *Denya*, supra, 294 Conn. 531.

[16] The plaintiff also relies on *Zinn* v. *Zinn*, Docket No. 248154, 2005 WL 320685 (Mich. App. February 10, 2005), and *Morrow* v. *Morrow*, Docket No. M2003-02448-COA-R3-CV, 2005 WL 1656825 (Tenn. App. July 14, 2005). In *Morrow*, the trial court determined that the marital assets should be divided

court in the present case did not award a specific percentage of the funds in the bank and brokerage accounts to each party, that principle is not applicable in the present case.

The plaintiff also contends that the trial court must have relied on the specific amounts in the bank and

equally between the parties. See *Morrow* v. *Morrow*, supra, *3. Both parties had retirement accounts that they had purchased at the same time and into which they had placed the same amount of money. Id., *5. The trial court awarded each account to its respective owner. Id. The value of the wife's account was $1500, however, and the value of the husband's account was $8600. Id. The difference in value resulted because the husband had invested in a money market fund, which provided modest but positive returns, whereas the wife had invested primarily in stocks and had suffered large losses as a result. Id. On appeal, the Court of Appeals of Tennessee concluded that, "by awarding to [the wife] an asset worth [$7100] less than the value assigned by the court, the court did not award [her] half the assets as it declared it intended." Id.

In *Zinn* v. *Zinn*, supra, 2005 WL 320685, the trial court issued a decision in which it concluded that 55 percent of the marital assets would be awarded to the wife and 45 percent to the husband. Id., *1. The court valued certain real property at $27,432, representing the value of the property, i.e., $39,000, less debt of $11,568. Id., *5. Approximately $7400 of the $11,568 indebtedness was in the form of a mortgage against the property, and the remainder, or about $4100, represented the proceeds from a bank loan that the husband had paid off. Id., *6. In a separate judgment, the trial court awarded the property to the wife and ordered that she pay "all indebtedness existing against [the property] . . . ." Id., *5. On appeal, the husband claimed that the judgment should be corrected so that the wife also would be required to pay the husband the amount of the debt that he had paid off. Id. The Court of Appeals of Michigan concluded that, because the failure of the trial court to include the amount of the debt that the husband had paid off in the judgment "significantly chang[ed]" the intended distribution of the marital assets; id., *6; the failure must have been a mistake, and the court remanded the case to the trial court for correction of the mistake. Id.

In the present case, the plaintiff relies on *Morrow* and *Zinn* for the proposition that the trial court's assignment of a specific dollar value to an asset that it has awarded to a party evinces an intent to award a specific dollar amount to the party. Contrary to the plaintiff's assertion, those cases stand for the proposition that, when the trial court clearly has evinced an intent to award a specific percentage of the marital assets to each party, the actual dollar value of the assets must be considered in determining whether the distribution comports with that intent. Even if we were to agree with the plaintiff, the principle that he urges is not applicable in the present case because the trial court did not award specific percentages of the marital assets to each party.

brokerage accounts in distributing the marital assets because it would be unreasonable to conclude that, if the accounts had contained only $24 million instead of approximately $85 million, the trial court had intended to award all of the funds to the defendant, leaving nothing for the plaintiff. In essence, the plaintiff contends that, in dividing funds contained in an account whose value fluctuates, it would be inherently unreasonable for the trial court to award a specific dollar amount to one party and the remainder to the other party. Again, we are not persuaded. First, as we previously observed, if the amount in an account is subject to fluctuation, compliance with a judgment awarding a specific dollar amount to each party also would be problematic. Second, the fact that the trial court assigned a specific amount to each of the bank and brokerage accounts does not necessarily reflect the court's intent to award a specific amount to each party. Rather, as we indicated, it is apparent that the trial court determined the specific amounts in the accounts merely to obtain a general accounting of the marital assets as a broad guide to their equitable distribution. The trial court found that the value of the parties' marital assets exceeded $147 million. It is reasonable to conclude, therefore, that, when the trial court learned that it had overvalued one of the bank or brokerage accounts by $3,650,000, it concluded that the error was not so significant in light of the total value of the assets that it rendered the award of $23,834,900 to the defendant inconsistent with its original intent.[17] We conclude, therefore, that the

[17] The trial court's $3,650,000 error resulted in an increase of the percentage of the bank and brokerage accounts awarded to the defendant from approximately 27 percent ($24,000,000 divided by $89,039,617.68) to approximately 28 percent ($24,000,000 divided by $85,389,617.68).

The fact that the trial court adjusted the $24 million lump sum award to the defendant to account for the erroneous valuation of the furniture and the errors with regard to the paintings does not affect our conclusion that the trial court had not intended to award a specific dollar amount to the plaintiff. Again, the trial court presumably considered the fact that the amounts in the accounts were subject to fluctuation when it distributed the

Appellate Court properly concluded that the trial court's order requiring the plaintiff to pay the defendant $3,828,081 did not constitute an improper modification of the judgment.

## II

We next consider the plaintiff's claim that "the Appellate Court improperly applied . . . § 37-3a in upholding the trial court's award of interest because a wrongful detention of money by a judgment debtor requires a finding that the debtor acted without any justification . . . ." The plaintiff argues that, because he withheld payment of the $3,828,081 to the defendant in the good faith belief that the trial court had awarded him a lump sum amount, his conduct was not wrongful or unjustified, and, therefore, it was not within the trial court's discretion to award interest on that amount to the defendant. We disagree.

At the outset, we note that, because the plaintiff improperly has characterized the action of the Appellate Court, it is necessary to reframe the certified question. See, e.g., *Rosado* v. *Bridgeport Roman Catholic Diocesan Corp.*, 276 Conn. 168, 191, 884 A.2d 981 (2005) (court may reframe certified question "to reflect more accurately the [issue] presented"). Specifically, the Appellate Court did not uphold the trial court's award of interest under § 37-3a to the defendant but concluded only that the trial court was not foreclosed under the facts and circumstances of the case "from finding that the plaintiff acted wrongfully in withholding payment of any portion of the [money] awarded [to] the defendant when [it was] due and payable and [in] awarding interest under § 37-3a." *Sosin* v. *Sosin*, supra, 109 Conn. App. 707. As we indicated, after reaching this conclusion, the Appellate Court determined that the case must be

marital assets. It could not have taken the other errors into account when it distributed those assets.

remanded to the trial court for a determination as to whether an award of interest would be appropriate under the circumstances of the case. Id., 708, 710. Accordingly, the issue that we must address is whether the Appellate Court properly determined that it is within the trial court's discretion to award interest pursuant to § 37-3a when the liable party has withheld payment but not without justification.

With this question in mind, we next must determine the appropriate standard of review. Ordinarily, "[t]he decision of whether to grant interest under § 37-3a is primarily an equitable determination and a matter lying within the discretion of the trial court. . . . In determining whether the trial court has abused its discretion, we must make every reasonable presumption in favor of the correctness of its action." (Internal quotation marks omitted.) *Chapman Lumber, Inc.* v. *Tager*, 288 Conn. 69, 99–100, 952 A.2d 1 (2008).

In the present case, however, the plaintiff claims that, as a matter of law, an award of interest pursuant to § 37-3a is improper if the liable party has withheld payment but not unreasonably or without justification. Because this raises a question of statutory interpretation, our review is plenary. See, e.g., *Stiffler* v. *Continental Ins. Co.*, 288 Conn. 38, 42, 950 A.2d 1270 (2008). Furthermore, "[w]hen construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine the meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield

absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) Id., 43.

We begin our analysis with the language of the statute. General Statutes § 37-3a (a) provides in relevant part: "Except as provided in sections 37-3b, 37-3c and 52-192a, interest at the rate of ten per cent a year, and no more, may be recovered and allowed in civil actions or arbitration proceedings under chapter 909, including actions to recover money loaned at a greater rate, as damages for the detention of money after it becomes payable. . . ." Because § 37-3a provides that interest "*may be* recovered"; (emphasis added); it is clear that the statute does not require an award of interest in every case in which money has been detained after it has become payable. Rather, an award of interest is discretionary. See *Smithfield Associates, LLC* v. *Tolland Bank*, 86 Conn. App. 14, 26, 860 A.2d 738 (2004) ("an award of . . . interest [pursuant to § 37-3a] is discretionary . . . rather than automatic" [internal quotation marks omitted]), cert. denied, 273 Conn. 901, 867 A.2d 839 (2005). The statute does not, however, clearly and unambiguously set forth the factors that a trial court must consider in exercising its discretion to award interest. Accordingly, in determining what these factors are, we consider the legislative policy that § 37-3a was designed to implement and its relationship to existing legislation and common-law principles governing the same general subject matter. See, e.g., *Stiffler* v. *Continental Ins. Co.*, supra, 288 Conn. 43.

In construing § 37-3a, we do not write on a blank slate. It is well settled, and the parties in the present case do not dispute, that "[t]he court's determination [as to whether interest should be awarded under § 37-3a] should be made in view of the demands of justice rather than through the application of any arbitrary rule. . . . Whether interest may be awarded depends on whether the money involved is payable . . . and whether the detention of the money is or is not wrongful under the circumstances." (Citations omitted; internal quotation marks omitted.) *Stephan* v. *Pennsylvania General Ins. Co.*, 224 Conn. 758, 765, 621 A.2d 258 (1993); see also *LaSalla* v. *Doctor's Associates, Inc.*, 278 Conn. 578, 597, 898 A.2d 803 (2006) ("[w]e have construed [§ 37-3a] to make the allowance of interest depend [on] whether the detention of the money is or is not wrongful under the circumstances" [internal quotation marks omitted]).

Although the trial court must determine that the liable party's detention of money was wrongful in order to award interest pursuant to § 37-3a, neither this court nor the Appellate Court has held, for purposes of the statute, that the detention of money cannot be wrongful if the liable party had a good faith basis for nonpayment. Indeed, we have held to the contrary. See *General Electric Supply Co.* v. *Southern New England Telephone Co.*, 185 Conn. 583, 605, 441 A.2d 581 (1981) (trial court did not abuse discretion in awarding interest pursuant to predecessor to § 37-3a even though "it recognized the bona fides of the defendants' refusal to pay" when trial court held that retention of money owed was "unlawful and thus wrongful"), overruled in part on other grounds by *State* v. *Spillane*, 257 Conn. 750, 778 A.2d 101 (2001); see also *Ferrato* v. *Webster Bank*, 67 Conn. App. 588, 596, 789 A.2d 472 ("Although bad faith is one factor that the court may look at when deciding whether to award interest under § 37-3a . . . in the

context of the statute, 'wrongful' is not synonymous with bad faith conduct. Rather, wrongful means simply that the act is performed without the legal right to do so."), cert. denied, 259 Conn. 930, 793 A.2d 1084 (2002). The holdings of these cases are consistent with the primary purpose of § 37-3a, which is not to punish persons who have detained money owed to others in bad faith but, rather, to compensate parties that have been deprived of the use of their money.[18] See *Neiditz* v. *Morton S. Fine & Associates, Inc.,* 199 Conn. 683, 691, 508 A.2d 438 (1986) (§ 37-3a "is intended to compensate the prevailing party for a delay in obtaining money that rightfully belongs to him"); *Paulus* v. *LaSala,* 56 Conn. App. 139, 151, 742 A.2d 379 (1999) (purpose of § 37-3a "is to compensate plaintiffs who have been deprived of the use of money wrongfully withheld by defendants"), cert. denied, 252 Conn. 928, 746 A.2d 789 (2000). Accordingly, we conclude that the Appellate Court properly determined that, even if the plaintiff had withheld the $3,828,081 on the basis of a good faith belief that he was entitled to that sum, the trial court was not foreclosed from awarding interest pursuant to § 37-3a.

In support of his claim to the contrary, the plaintiff relies on *Travelers Property & Casualty Co.* v. *Christie,* 99 Conn. App. 747, 765, 916 A.2d 114 (2007) ("the focus of the prejudgment interest award allowed by § 37-3a has been to provide interest, at the discretion of the court, when there is no dispute over the sum due and the liable party has, without justification, refused to pay"), *Smithfield Associates, LLC* v. *Tolland Bank,* supra, 86 Conn. App. 26 ("[a] plaintiff's burden of dem-

---

[18] Accordingly, we are not persuaded by the plaintiff's claim that, because General Statutes § 37-3a authorizes an award of interest "as *damages* for the detention of money after it becomes payable"; (emphasis added); the statute evinces a legislative intent that interest may be awarded only when the liable party's conduct has been blameworthy or unreasonable. An award of compensatory damages does not require proof of bad faith or unreasonable conduct above and beyond proof of the underlying legal claim.

onstrating that the retention of money is wrongful requires more than demonstrating that the opposing party detained money when it should not have done so" [internal quotation marks omitted]), and *Maloney* v. *PCRE, LLC,* 68 Conn. App. 727, 756, 793 A.2d 1118 (2002) (same). We disagree, however, that these cases support the proposition that the trial court lacks discretion to award interest pursuant to § 37-3a if the liable party has withheld payment in good faith.

In *Smithfield Associates, LLC,* the Appellate Court determined that the trial court improperly had awarded interest *because the defendant did not withhold money after it was payable.* See *Smithfield Associates, LLC* v. *Tolland Bank,* supra, 86 Conn. App. 27 ("[b]ecause we have determined . . . that the defendant had a right to possess the remainder of the money, it was improper to award the rest of the prejudgment interest"). Thus, the case does not stand for the proposition that, when a party has withheld payment that is due, the trial court cannot award interest pursuant to § 37-3a unless it finds that the conduct was *unreasonable.* In *Maloney,* the Appellate Court noted that "[o]ur courts have seldom found an abuse of discretion in the determination by a trial court of whether a detention of money was wrongful"; (internal quotation marks omitted) *Maloney* v. *PCRE, LLC,* supra, 68 Conn. App. 756; and that "[p]rior courts have properly awarded . . . interest despite the fact that the issues at trial were hotly contested . . . ." (Citation omitted; internal quotation marks omitted.) Id. Thus, the court's conclusion that the trial court did not abuse its discretion in awarding interest when there was a bona fide dispute as to whether money had been wrongfully withheld and there was no evidence of bad faith or willfulness was based on the principle that the trial court has broad discretion to award or deny interest, not on the principle that bad faith or willfulness is a prerequisite to an award of interest. Compare *Gen-*

*eral Electric Supply Co.* v. *Southern New England Telephone Co.*, supra, 185 Conn. 605 (trial court did not abuse discretion in awarding interest even though "it recognized the bona fides of the defendants' refusal to pay" when trial court held that retention of money owed was "unlawful and thus wrongful"), with *MedValUSA Health Programs, Inc.* v. *MemberWorks, Inc.*, 273 Conn. 634, 665–66, 872 A.2d 423 (trial court's denial of motion for interest pursuant to § 37-3a was not abuse of discretion when trial court found that defendant had not wrongfully withheld money because its arguments in support of motion to vacate arbitration award were not frivolous), cert. denied sub nom. *Vertrue, Inc.* v. *MedValUSA Health Programs, Inc.*, 546 U.S. 960, 126 S. Ct. 479, 163 L. Ed. 2d 363 (2005), and *O'Hara* v. *State*, 218 Conn. 628, 644, 590 A.2d 948 (1991) (trial court's denial of request for award of interest pursuant to § 37-3a was not abuse of discretion when trial court found "no evidence of bad faith or wrongdoing on the part of the defendant in detaining the money").

In the other Appellate Court case on which the plaintiff relies, namely, *Travelers Property & Casualty Co.*, the plaintiff insurance company brought an interpleader action to determine the proper distribution of insurance proceeds for damage to the residence of the defendant homeowner. *Travelers Property & Casualty Co.* v. *Christie*, supra, 99 Conn. App. 748. The trial court ordered the insurance company to pay a certain amount to cover the fee of an appraiser who had assessed the damage, plus interest pursuant to § 37-3a from the date that he completed his services and delivered his bill to the homeowner. Id., 750 and n.6. On appeal, the homeowner challenged the trial court's award of interest to the appraiser. Id., 763. The Appellate Court held that, because the homeowner disagreed with the amount of the appraiser's bill in good faith, and because the homeowner did not have actual control of the

money owed to the appraiser and did not benefit from the use of the money, the trial court abused its discretion when it awarded interest. Id., 765–66. The Appellate Court rejected the appraiser's claim that the equities favored upholding the award of interest because his fee would have been paid if the homeowner had not disputed it, reasoning that "the [homeowner] would have [had] an equally valid claim for prejudgment interest against [the appraiser] as she, too, could not secure her portion of the . . . award because [the appraiser] disputed her assessment of his fee." Id., 766.

*Travelers Property & Casualty Co.* does not stand for the broad proposition that, if payment has been withheld in good faith, an award of interest pursuant to § 37-3a necessarily constitutes an abuse of discretion. Rather, the case merely stands for the proposition that interest may not be awarded when the party disputing liability was not in control of the money and did not benefit from its use during the prejudgment period.[19]

The plaintiff also relies on a number of cases from other jurisdictions that have held that, when the amount of a debt is subject to a good faith dispute, the liable party cannot be required to pay prejudgment interest. See *United States ex rel. Treat Bros. Co.* v. *Fidelity & Deposit Co.*, 986 F.2d 1110, 1121 (7th Cir. 1993) (under Illinois statute allowing award of interest "on money withheld by an unreasonable and vexatious delay of payment," party is not entitled to award of prejudgment interest when existence of legal obligation is subject to "good faith defense of a lawsuit" [internal quotation marks omitted]); *Walton Motor Sales, Inc.* v. *Ross*, 736 F.2d 1449, 1458–59 (11th Cir. 1984) (under Georgia law, party is entitled to prejudgment interest only if debt is liquidated and amount is not subject to good faith dispute); *Norgan* v. *American Way Life Ins. Co.*, 188

---

[19] We express no view on the merits of this holding.

Mich. App. 158, 164–65, 469 N.W.2d 23 (party is entitled to interest only when liable party acted in bad faith or when claim is not reasonably in dispute), appeal denied, 439 Mich. 902, 478 N.W.2d 649 (1991); *Cheloha* v. *Cheloha*, 255 Neb. 32, 43, 582 N.W.2d 291 (1998) (party is entitled to interest when claim is liquidated, and claim is liquidated only "when there is no reasonable controversy either as to the plaintiff's right to recover or as to the amount of such recovery"); *Culhane* v. *Michels*, 615 N.W.2d 580, 586 (S.D. 2000) (when party has terminated alimony payments in good faith, "equity will not allow an interest award to the recipient on past due amounts"). As we have explained, however, this rule is contrary to established case law. See *General Electric Supply Co.* v. *Southern New England Telephone Co.*, supra, 185 Conn. 605; *Ferrato* v. *Webster Bank*, supra, 67 Conn. App. 596; see also *Peterman* v. *State Farm Mutual Automobile Ins. Co.*, 8 P.3d 549, 551 (Colo. App. 2000) (rejecting claim that award of interest is permissible only when payment was withheld "tortious[ly] or in bad faith" and concluding that "a wrongful withholding only requires the failure to pay or deliver money or property when there is an obligation to do so"). Accordingly, we do not find these cases persuasive for purposes of our construction of § 37-3a.

The plaintiff finally contends that, because § 37-3a does not *require* the trial court to award interest, the legislature must have contemplated that the mere failure to pay a debt would not be sufficient to support an award of interest and that the failure to pay must have been unjustified. See *Smithfield Associates, LLC* v. *Tolland Bank*, supra, 86 Conn. App. 26 ("[t]he fact that an award of . . . interest is discretionary and subject to equitable considerations, rather than automatic, reflects the reality that not all improper detentions of money are wrongful" [internal quotation marks omitted]). Again, we are not persuaded. This court has held

that an interest award "is limited to cases in which the damage is of a sort [that] could reasonably be ascertained by due inquiry and investigation on the date from which the interest is awarded." *United Aircraft Corp.* v. *International Assn. of Machinists*, 161 Conn. 79, 107, 285 A.2d 330 (1971), cert. denied sub nom. *International Assn. of Machinists & Aerospace Workers (AFL-CIO)* v. *United Aircraft Corp.*, 404 U.S. 1016, 92 S. Ct. 675, 30 L. Ed. 2d 663 (1972). In addition, when the money is not within the control of the party disputing the debt and that party has not benefited from possession of the money, an award of interest pursuant to § 37-3a is beyond the trial court's discretion. See *Travelers Property & Casualty Co.* v. *Christie*, supra, 99 Conn. App. 766. Thus, the fact that the trial court has the discretion to award interest when a party has disputed his liability in good faith does not mean that there are no limits on the court's discretion. We therefore reject the plaintiff's claim that the trial court has the discretion to award interest pursuant to § 37-3a only when payment has been withheld unreasonably or without justification. Rather, we conclude that the Appellate Court properly determined that it is within the discretion of the trial court to determine that the retention of money was "wrongful" for purposes of § 37-3a when it was unlawful. See *General Electric Supply Co.* v. *Southern New England Telephone Co.*, supra, 185 Conn. 605.

III

We turn finally to the defendant's claim in connection with her cross appeal that the Appellate Court improperly determined that the case must be remanded to the trial court for a de novo consideration of whether she is entitled to interest under § 37-3a. The defendant contends that remanding the case is unnecessary and that the Appellate Court simply should have reinstated the trial court's March 23, 2006 order, as clarified by its November 27, 2006 order, which collectively provide

that § 37-3a is the applicable statute and that the proper annual rate of interest is 10 percent. We agree with the defendant.

The following undisputed facts and procedural history are relevant to our resolution of this claim. On September 8, 2005, the trial court granted the plaintiff's initial motion to reargue the asset distribution and ordered that the lump sum cash award to the defendant be reduced to $23,834,900. When the plaintiff failed to pay the award, the defendant filed a motion for contempt, and the plaintiff then paid $20,006,819 to the defendant on November 10, 2005. In her memorandum of law in support of the motion for contempt, the defendant maintained that she was entitled to interest on the unpaid amount of $3,828,081 pursuant to § 37-3a. Specifically, she asserted that the plaintiff "should be required to pay interest at the statutory rate of 10 [percent] on [$23,834,900] from April 21, 2005, through November 10, 2005. [The plaintiff] has also had the use of $3,828,081 of [the defendant's] money since November 10, 2005, an amount that he unilaterally deducted from the [c]ourt-ordered sum . . . ." In his reply to the defendant's memorandum of law, the plaintiff acknowledged that the defendant's claim for interest was governed by § 37-3a, but he maintained that the defendant was not entitled to interest under that statutory provision because his retention of the money had not been wrongful.

On March 23, 2006, the trial court issued an order on the defendant's motion for contempt, concluding that the plaintiff had "unilaterally deducted $3,828,081 from the sum due [to] the defendant" and that "[t]here was no escrow of funds pending a judicial determination" of the issue. The court therefore ordered the plaintiff to pay the defendant that amount plus "[i]nterest at the legal rate . . . on said sum from September 8, 2005 . . . ." The court, however, denied the defendant's

motion for contempt and request for interest at the statutory rate of 10 percent per year on the entire principal amount of $23,834,900 from April 21, 2005, to November 10, 2005. The plaintiff then delivered payment in the amount of $4,002,599.54 to the defendant, which included the unpaid amount plus interest at the annual rate of 8 percent from September 8, 2005, to the date of payment, that is, March 31, 2006.

On April 11, 2006, the defendant filed another motion for contempt, claiming that the plaintiff should have paid interest on the $3,828,081 at the annual rate of 10 percent, not 8 percent. In addition, on November 2, 2006, the defendant filed a motion for articulation of the trial court's March 23, 2006 order, seeking clarification as to (1) whether the trial court, in its order, had intended to award interest at the annual rate of 10 percent or, as the plaintiff contended, the rate of 8 percent, and (2) the factual and legal bases for the trial court's denial of the defendant's request for an award of interest on the entire $23,834,900 award from the date of judgment. The plaintiff filed an opposition to the motion for articulation, claiming that, although § 37-3a was the applicable statute, because the trial court had ordered him to pay the "legal rate" of interest, and because the only statute referring to the "legal rate" was § 37-1,[20] which provides for an annual interest rate of 8 percent, it was clear that the trial court intended him to pay interest at the rate of 8 percent. In addition, the plaintiff claimed that it would have been improper for the trial court to award interest on the entire $23,834,900 because he had not wrongfully withheld payment of the award. The trial court denied the motion for articulation. Thereafter, the court conducted a hearing on the defendant's motion for contempt, at which the parties raised the same arguments with respect to the rate of interest that they had raised in the proceed-

---

[20] Section 37-1 is entitled, "Legal rate. Accrual as addition to debt."

ings on the motion for articulation. On November 27, 2006, the trial court denied the motion for contempt but ordered the plaintiff to pay 10 percent interest pursuant to § 37-3a.

Meanwhile, on November 13, 2006, the defendant filed with the Appellate Court a motion for review of the trial court's denial of her motion for articulation of the March 23, 2006 order. On December 14, 2006, the Appellate Court, apparently unaware of the trial court's November 27, 2006 order directing the plaintiff to pay interest of 10 percent pursuant to § 37-3a, granted the motion for review and ordered the trial court to articulate the statutory basis for the award of interest. In response, on February 7, 2007, the trial court issued an articulation in which it stated that the rate of interest was 8 percent pursuant to § 37-1. The defendant then filed a motion to reargue and for reconsideration of that articulation, as well as a motion for review of the articulation with the Appellate Court. Before the Appellate Court could rule on the motion for review, the trial court granted the defendant's motion to reargue and for reconsideration, and issued an order, dated June 8, 2007, again stating that § 37-1 was the applicable statute and that the annual rate of interest was 8 percent. Thereafter, the defendant withdrew her motion for review of the February 7, 2007 articulation, presumably in the belief that the trial court's June 8, 2007 order reaffirming the February 7, 2007 articulation would be the court's final word on the issue.

With this background in mind, we address the defendant's claim that the Appellate Court improperly concluded that, because "the [trial] court's rulings reflect uncertainty and ambiguity as to the award of interest," and because "the court ha[d] not clearly set forth its rationale for awarding interest under the proper statute," the appropriate remedy was "to remand the case to the [trial] court to revisit the issue . . . ." *Sosin* v.

*Sosin*, supra, 109 Conn. App. 708. Because the question of whether a remand is required involves a legal determination, our review is plenary. See *Wiseman* v. *Armstrong*, 295 Conn. 94, 106, 989 A.2d 1027 (2010) ("[a] trial court's legal determination is a question of law and is subject to plenary review"); cf. *Creatura* v. *Creatura*, 122 Conn. App. 47, 52, 998 A.2d 798 (2010) ("[b]ecause a determination as to whether a contract is ambiguous is a question of law . . . review is plenary").

Although we agree with the Appellate Court that the proceedings before the trial court were extremely confusing, we do not agree that a remand is required to resolve the question of the trial court's intent. It is clear that, when the trial court issued the March 23, 2006 order, in which it concluded that the plaintiff had "unilaterally deducted $3,828,081 from the sum due [to] the defendant," and directed the plaintiff to pay "[i]nterest at the legal rate . . . on [$3,828,081] from September 8, 2005," it was relying on the memoranda of law that the parties had submitted on the defendant's initial motion for contempt in which both parties agreed that § 37-3a was the applicable statute. Indeed, the defendant stated in her memorandum of law that the plaintiff had "*unilaterally deducted* [$3,828,081] from the [c]ourt-ordered sum," and asserted that the plaintiff "should be required to pay interest at the *statutory rate* of 10 [percent]" pursuant to § 37-3a. (Emphasis added.) Moreover, as further support for her contention that the plaintiff's conduct had been wrongful for purposes of § 37-3a, the defendant, in that same memorandum of law, maintained that the plaintiff "could have escrowed the funds in an interest bearing account" but had failed to do so; in its March 23, 2006 order awarding interest, the trial court expressly observed that "[t]here was no escrow of funds pending a judicial determination." The similarity between the language in the defendant's memorandum of law and the language of the trial

court's March 23, 2006 order makes it clear that the court had adopted the defendant's position and intended to award interest at an annual rate of 10 percent pursuant to § 37-3a. Thus, it is also clear that the trial court's November 27, 2006 order directing the plaintiff to pay 10 percent interest on the $3,828,081 pursuant to § 37-3a reflected the court's original intent.[21]

It is well established that "a trial court may not alter its initial findings by way of a further articulation . . . ." (Citation omitted.) *Eichman* v. *J & J Building Co.*, 216 Conn. 443, 458, 582 A.2d 182 (1990); see also *Fantasia* v. *Milford Fastening Systems*, 86 Conn. App. 270, 284, 860 A.2d 779 (2004) ("[a]n articulation is not an opportunity for a trial court to substitute a new decision [or] to change the reasoning or basis of a prior decision" [internal quotation marks omitted]), cert. denied, 272 Conn. 919, 866 A.2d 1286 (2005). Because it is clear that the trial court's original intent was to award interest at the rate of 10 percent pursuant to § 37-3a, and because the February 7, 2007 articulation and June 8, 2007 order were inconsistent with that intent, we conclude that the trial court's March 23, 2006 order, as clarified by its November 27, 2006 order, stands, and the subsequent articulation and order should be disregarded. See *In re Christian P.*, 98 Conn. App. 264, 266–67 n.4, 907 A.2d 1261 (2006) (Appellate Court disregarded articulation when trial court went beyond permissible scope by making new and inconsistent factual findings). Accordingly, we conclude that the Appellate Court improperly determined that a remand was required to determine the amount of interest to which the defendant was entitled.

[21] As we indicated, because the trial court's November 27, 2006 order was clear and unambiguous, it is reasonable to conclude that the Appellate Court granted the defendant's November 13, 2006 motion for review and ordered the trial court to articulate the basis for its March 23, 2006 order only because it was unaware that the trial court already had done so in the November 27, 2006 order.

In support of his claim to the contrary, the plaintiff relies on *State* v. *Wilson*, 199 Conn. 417, 513 A.2d 620 (1986). In *Wilson*, the trial court issued two conflicting but "mutually independent and legally sufficient memoranda of decision"; id., 438; namely, an oral ruling on the defendant's motion to suppress, in which the court concluded that the defendant had not requested an attorney during his interrogation, and a subsequent written memorandum of decision on the same motion, in which the court indicated that the defendant had requested an attorney. Id., 429–30, 432. Because this court had no principled basis on which to select one of the conflicting rulings over the other, we remanded the case to the trial court for a new trial. Id., 445, 450.

The plaintiff in the present case contends that, because the trial court's November 27, 2006, February 7, 2007, and June 8, 2007 rulings all related to the March 23, 2006 order, the court issued three equally valid, but inconsistent, rulings, and, under *Wilson*, a remand is required. We do not agree. The purpose of the November 27, 2006 order was to clarify the legal basis and intent of the March 23, 2006 order, in the context of the proceedings on the defendant's motion for contempt. See *AvalonBay Communities, Inc.* v. *Plan & Zoning Commission*, supra, 260 Conn. 246 (trial court has "continuing jurisdiction to effectuate its prior judgments . . . by interpreting an ambiguous judgment and entering orders to effectuate the judgment as interpreted"). After the intent of the ruling was fully clarified, the subsequent inconsistent rulings were not "mutually independent and legally sufficient"; *State* v. *Wilson*, supra, 199 Conn. 438; but were both unnecessary and improper. Accordingly, we conclude that *Wilson* does not control the present case.

The plaintiff also contends that, under Practice Book § 66-5, the exclusive procedure for challenging an articulation is a motion for review. We are not persuaded.

Practice Book § 66-5 provides in relevant part: "The sole remedy of any party desiring the court having appellate jurisdiction to review the trial court's decision on [a] motion [for articulation] . . . or any other correction or addition ordered by the trial court during the pendency of the appeal shall be by motion for review . . . ."[22] We note that, since this language was adopted in 1996; see Connecticut Law Journal, Vol. 57, No. 47 (May 21, 1996) p. 29E; the Appellate Court previously has disregarded an articulation by the trial court that was inconsistent with the trial court's original ruling, even though no party had filed a motion for review of the inconsistent articulation. See *In re Christian P.*, supra, 98 Conn. App. 266–67 n.4. Although there was no claim in that case that a motion for review is the sole means by which an inconsistent articulation may be challenged, we see no reason why the rule that the trial court cannot alter the substance of a ruling by way of an articulation should apply only in proceedings in which a motion for review has been filed. If the issue is raised on appeal, all parties have the opportunity to address it, and the record is otherwise adequate for review, nothing would be gained by requiring a court with appellate jurisdiction to treat an articulation that is inconsistent with the trial court's original ruling as an independent and equally valid ruling in the absence of a motion for review.[23] Indeed, in the present case, the plaintiff concedes that, on their face, the February 7, 2007 articulation and June 8, 2007 order were incorrect as a matter of law. We also note that the defendant filed a motion for review of the trial court's February 7, 2007 articulation and subsequently withdrew it, apparently because, before the Appellate Court could

---

[22] Motions for review of articulations are governed by Practice Book § 66-7.

[23] Of course, if the intent of a ruling is unclear, the failure to seek review of a subsequent articulation that failed to clarify the original intent could render the record inadequate for review on appeal, thereby necessitating a remand. That is not the situation in the present case.

rule on the motion for review, the trial court granted her motion to reargue and for reconsideration of the February 7, 2007 articulation and issued its June 8, 2007 order. Under these circumstances, it would be particularly unfair and counterproductive to treat the February 7, 2007 articulation and June 8, 2007 order as independently valid rulings merely because their validity was not determined in proceedings on a motion for review.

Because we have concluded that the intent and legal basis of the trial court's award of interest were clear, it follows that the record is adequate for this court to determine whether the award of interest constituted an abuse of discretion. We conclude that it did not. The trial court stated in its September 8, 2005 order that it was its original "intention to award [the] defendant the lump cash award of $24,000,000" and ordered that the award be reduced to $23,834,900. Although the plaintiff may have had a good faith belief that the September 8, 2005 order was inconsistent with the intent of the original judgment, he knew or should have known that the defendant also would have a good faith claim that she was entitled to the full amount of the modified award and that he could be found liable for that amount. Thus, the amount due to the defendant "reasonably [could] be ascertained by due inquiry and investigation" as of September 8, 2005.[24] *United Aircraft Corp.* v. *International Assn. of Machinists*, supra, 161 Conn. 107. Moreover, the plaintiff had the use and benefit of the money during the relevant period. Cf. *Travelers Property & Casualty Co.* v. *Christie*, supra, 99 Conn. App. 765–66 (award of interest was abuse of discretion when party

[24] We recognize that the trial court did not rule on the plaintiff's amended motion to reargue, in which the plaintiff noted that the trial court erroneously had valued the bank account, until October 11, 2005. The plaintiff, however, has abandoned his claim that interest should have been calculated from that date.

challenging liability did not control or have benefit of use of money). Although the trial court did not articulate the equitable reasons for the award of interest, we must presume that the trial court applied the proper legal standard.[25] See *Orcutt* v. *Commissioner of Correction,*

[25] In support of its conclusion that a remand was required, the Appellate Court relied on cases holding that "[a] trial court must make two determinations when awarding compensatory interest under § 37-3a: (1) whether the party against whom interest is sought has wrongfully detained money due the other party; and (2) the date [on] which the wrongful detention began in order to determine the time from which interest should be calculated." (Internal quotation marks omitted.) *Sosin* v. *Sosin*, supra, 109 Conn. App. 704; see also id., 708 ("awarding interest under § 37-3a requires that the court make specific findings and exercise its equitable discretion"). To the extent that the Appellate Court concluded that these findings must be expressly made on the record, that conclusion was incorrect. Indeed, this court has held to the contrary. See, e.g., *Cecio Bros., Inc.* v. *Feldmann*, 161 Conn. 265, 274–75, 287 A.2d 374 (1971) (rejecting claim that trial court was required to make specific finding of wrongfulness before awarding interest under predecessor to § 37-3a and concluding that "it [was] implicit in the court's conclusions that the money due the plaintiff was wrongfully detained after [the due date]"); see also *Hartford Steam Boiler Inspection & Ins. Co.* v. *Underwriters at Lloyd's & Cos. Collective*, 121 Conn. App. 31, 63, 994 A.2d 262 ("we must presume that the [trial] court acted properly . . . which, in [this] case, compels the conclusion that the court implicitly found wrongful detention on the part of the plaintiff" [citation omitted]), cert. denied, 297 Conn. 918, 996 A.2d 277 (2010). Furthermore, although this court has stated that the retention of funds must be wrongful in order to trigger the provisions of § 37-3a, the statute itself merely provides that interest may be awarded "for the detention of money after it becomes payable." General Statutes § 37-3a. We adopted the term "wrongful" to describe the detention of money for purposes of awarding statutorily authorized interest during the early twentieth century; see, e.g., *Winsted Savings Bank* v. *New Hartford*, 78 Conn. 319, 324, 62 A. 81 (1905); at a time when that term was synonymous with "[in]equitable," "partial" and "one-sided . . . ." Roget's Thesaurus of English Words and Phrases (C. Mawson ed., Rev. Ed. 1921) p. 320; accord Roget Dictionary of Synonyms and Antonyms (1931) p. 575. Although the term today is often equated, in common parlance, to such terms as "criminal," "delinquent," and "fraudulent"; Roget's International Thesaurus (6th Ed. 2001) p. 465; as we previously explained, for purposes of § 37-3a, that term has been construed to mean "without . . . legal right . . . ." *Ferrato* v. *Webster Bank*, supra, 67 Conn. App. 596. Because the case law interpreting § 37-3a has equated "wrongful" and the withholding of funds without the legal right to do so, and because a finding of wrongfulness in this context does not require the trial court to assess blameworthiness, requiring the

284 Conn. 724, 738–39 n.25, 937 A.2d 656 (2007) ("in the absence of an articulation . . . we presume that the trial court acted properly"). Because the trial court determined that the plaintiff unlawfully, and thus wrongfully, withheld payment of the $3,828,081 to the defendant, we conclude that it was within the trial court's discretion to award interest on that amount pursuant to § 37-3a.

The judgment of the Appellate Court is reversed insofar as it remanded the case to the trial court for reconsideration of the issue of postjudgment interest and the case is remanded to the Appellate Court with direction to remand the case to the trial court with direction to reinstate its March 23, 2006 order, as clarified by its November 27, 2006 order;[26] the judgment of the Appellate Court is affirmed in all other respects.

trial court to find both that the money was detained after it became payable *and* that such detention was wrongful essentially would require the trial court to make redundant findings.

[26] As we previously indicated, in the Appellate Court, the defendant also claimed that the trial court had abused its discretion in denying her request for interest on the entire judgment amount of $23,834,900, for the period April 21, 2005, through November 10, 2005. Without addressing the merits of this claim, the Appellate Court stated that, "if the [trial] court determines that the plaintiff wrongfully withheld all of the $23,834,900 payment that became due and payable on April 21, 2005, a proper application of the statute would permit an award of interest, up to 10 percent, on that amount until it was paid fully. It remains within the court's discretion, in light of its factual findings, to award interest on any portion of this payment that it determines [on remand] was withheld wrongfully until payment was made." *Sosin* v. *Sosin*, supra, 109 Conn. App. 710. This aspect of the Appellate Court's remand was predicated on its threshold determination that the trial court's rulings reflected "uncertainty and ambiguity as to the award of interest," that the trial court was required but failed to "set forth [clearly] its rationale for awarding interest," and, therefore, that the proper remedy was to remand the case to the trial court for a de novo hearing on the issue of interest. Id., 708. For the reasons set forth in this opinion, however, we conclude that the trial court's intent with respect to its award of interest under § 37-3a was sufficiently clear and, further, that its order concerning interest was supported by the record. As we also noted previously, in its ruling on the defendant's motion for contempt and motion for reargument with respect to the trial court's March 23, 2006 order, the trial court *denied*

246

In this opinion the other justices concurred.

the defendant's request for interest on the *entire* judgment amount of $23,834,900 from April 21, 2005, through November 10, 2005. Instead, the trial court awarded the defendant interest on $3,828,081 only, beginning on September 8, 2005, the date of the court's order on the plaintiff's initial motion to reargue. In light of our conclusion that the trial court's March 23, 2006 order, as clarified by the November 27, 2006 order, is unambiguous, including that portion of the order pertaining to the amount on which interest is to be calculated, the Appellate Court's determination that the defendant is entitled to a de novo hearing on the issue of whether she is entitled to interest on the entire judgment amount also must be reversed.

We note, finally, that, although the defendant seeks reversal of the judgment of the Appellate Court to the extent that that court remanded the case to the trial court for a new hearing on the issue of whether the plaintiff is required to pay the defendant interest on $3,828,081 or the entire award, the defendant expressly seeks reinstatement of the trial court's November 27, 2006 order "such that [the plaintiff] is required to pay [the defendant] interest on the [$3,828,081] at a rate of 10 [percent] and *beginning on April 21, 2005*." (Emphasis added.) As we previously indicated, however, the trial court's March 23, 2006 order, which the November 27, 2006 order clarified, directed the plaintiff to pay interest *beginning on September 8, 2005*. Although the defendant has not briefed the issue in this court, we assume that the defendant's prayer for relief is predicated on the Appellate Court's agreement with her claim in *that* court that the trial court should have awarded her interest on the $3,828,081 from April 21, 2005, rather than from September 8, 2005. In agreeing with that claim, the Appellate Court stated that "[a] court ha[s] no discretion to start its accrual [of interest] from any time other than the date of judgment"; (internal quotation marks omitted) *Sosin* v. *Sosin*, supra, 109 Conn. App. 709, quoting *Bower* v. *D'Onfro*, 45 Conn. App. 543, 551, 696 A.2d 1285 (1997); and concluded that, if the trial court determines on remand that the plaintiff wrongfully withheld money after it became payable, the trial court must award interest from the date of the original judgment. See *Sosin* v. *Sosin*, supra, 709. *Bower*, however, which the Appellate Court relied on in support of the proposition that the trial court had no discretion under § 37-3a to award interest other than from the date of judgment, involved the application of General Statutes § 37-3b (a) ("interest at the rate of ten per cent a year, and no more, shall be recovered and allowed in any action to recover damages for injury to the person, or to real or personal property, caused by negligence, *computed from the date that is twenty days after the date of judgment*" [emphasis added]), *not* § 37-3a. *Bower* v. *D'Onfro*, supra, 547–48. Section 37-3a contains no similar language requiring that interest be computed from the date of judgment or twenty days thereafter. Indeed, this court repeatedly has recognized that the trial court has broad discretion under § 37-3a to determine not only the rate of interest; see, e.g., *Sears, Roebuck & Co.* v. *Board of Tax Review*, 241 Conn. 749, 765–66, 699 A.2d 81 (1997) (holding that 10 percent

interest rate set forth in § 37-3a is not required rate of interest but, rather, represents maximum rate that trial court, in its discretion, may apply); but also the amount of interest based on the trial court's determination of whether the detention of money, or any portion thereof, was wrongful under all of the circumstances. See, e.g., *Associated Catalog Merchandisers, Inc.* v. *Chagnon,* 210 Conn. 734, 748–49, 557 A.2d 525 (1989); see also *MedValUSA Health Programs, Inc.* v. *MemberWorks, Inc.,* supra, 273 Conn. 666. Furthermore, "[our courts] have seldom found an abuse of discretion in the determination by a trial court of whether a detention of money was wrongful." (Internal quotation marks omitted.) *Newington* v. *General Sanitation Service Co.,* 196 Conn. 81, 90, 491 A.2d 363 (1985). In the present case, the trial court determined that the plaintiff's retention of $3,828,081 after the trial court had issued its September 8, 2005 order was wrongful under the circumstances and, therefore, that interest on the amount of $3,828,081 began to accrue as of September 8, 2005. We must assume that the trial court determined that, until that time, the plaintiff's retention of the money was not entirely unjustified. We are aware of no case law, and the Appellate Court and defendant have cited to none, suggesting that this determination constituted an abuse of discretion under § 37-3a.